**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **MARY C. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-931 (APM)** |
| | ) | |
| **JULIO E. AVILES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

In November 2016, Plaintiff Mary C. Williams, a lawyer, hired Defendant Julio Aviles to install a new gas furnace in her home in Southwest Washington, D.C.  Weeks later, Plaintiff claims to have developed flu symptoms, for which she sought treatment.  Then, in early April 2017 she was admitted to the emergency room overnight due to, among other things, migraine headaches and difficulty breathing.  When Plaintiff returned home, she fell ill again but did not smell gas in the house.  The next day, a technician from Washington Gas inspected the furnace and found a gas leak on a pipe fitting leading to the furnace.  Defendant came to Plaintiff's home the following day, confirmed a small leak on the pipe fitting, and repaired it by tightening the fitting.  Plaintiff claims she suffered gas poisoning due to the leak.

Proceeding pro se, Plaintiff now brings claims of negligence and breach of contract arising from Defendant's alleged failure to properly install the furnace.  She also asserts a claim of fraudulent misrepresentation and a violation of the D.C. Consumer Protection Act based on various statements and omissions Defendant allegedly made at the time Plaintiff hired him.

Each side seeks entry of summary judgment.  As part of the briefing, Defendant has moved to strike a late-filed expert disclosure and portions of various affidavits submitted by Plaintiff.  As explained below, the court strikes Plaintiff's untimely expert notice, grants Defendant's motion for partial summary judgment, and denies Plaintiff's motion for summary judgment.

## II.    BACKGROUND

### A.    Factual Background

The parties have expended reams of paper setting forth and disputing their respective version of events.  What is not disputed, and ultimately relevant for the court's disposition, is as follows.

In November 2016, Plaintiff owned a rowhouse in Southwest Washington, D.C. Pl.'s Resp. to Def.'s Statement of Facts as to Which There is No Dispute in Supp. of Def.'s Mot. for Summ. J., ECF No. 80 [hereinafter Pl.'s Resp. SOF], ¶ 1.  On or about November 21, 2016, she contracted with Defendant to install a Trane-model "80% gas furnace, 2 stage, 80,000 BTU" unit, and he did so.  *Id.* ¶¶ 7, 10.  Defendant, at the time, conducted business under the trade name Universal Air Duct Services.  *Id.* ¶ 2.  He was not, however, licensed to work in the District of Columbia as an HVAC technician.  Def.'s Resp. to Pl.'s Statement of Facts Not in Dispute, ECF No. 77-1 [hereinafter Def.'s Resp. SOF], at 1 ¶ 1.[1]

On January 6, 2017, Plaintiff visited her doctor complaining of "flu symptoms."  *Id.* at 16 ¶ 48; Pl.'s Mot. for Summ. J., ECF No. 70 [hereinafter Pl.'s Cross-Mot.], Ex. 16, ECF No. 70-3, at 25 (ECF pagination).  Months later, on April 2, 2017, she was taken to the emergency room due to experiencing headaches, body aches, confusion, and difficulty breathing.  Def.'s Resp. SOF at

---

[1] Because Plaintiff submitted three separate statements of undisputed facts, each of which starts paragraph numbering anew, the court cites the page number of Defendant's response in addition to the paragraph number for clarity.

17 ¶¶ 51–52.  She was admitted overnight for testing and observation.  *Id.* at 17 ¶ 53.  She arrived home on the evening of April 3rd and again fell ill, but she did not smell any gas in the house.  Pl.'s Resp. SOF ¶ 45.  In fact, Plaintiff had never smelled gas in her home at any time between November 21, 2016, and April 2, 2017.  *Id.* ¶¶ 39, 41–42.

The next day, April 4, 2017, a technician from Washington Gas came to Plaintiff's home.  The technician's notes from that visit state that he detected an "[o]dor present in entire house/building/multiple floors, Odor has been ongoing, Weak, and intermittent[.]"  Def.'s Mot. for Partial Summ. J. & Request for Oral Hr'g, ECF No. 69 [hereinafter Def.'s Mot.], Ex. E, ECF No. 69-7.  The technician's notes also state that he "FOUND [A] LEAK ON 3/4[ inch] UNION"— a type of pipe fitting—"AT FURANCE [sic]."  *Id.*

The following day, Defendant came to Plaintiff's home.  He detected a "small" or "tiny" gas leak on the 3/4" union pipe fitting.  *Id.* ¶ 50.  Defendant repaired the leak by tightening the pipe fitting using a channel lock, a type of adjustable wrench.  Def.'s Resp. SOF at 7 ¶ 21.  Afterwards, Plaintiff visited multiple physicians, including a neurologist.  *Id.* at 18–19 ¶¶ 56–57.  The parties dispute the findings of her medical visits.  *See id.*

Plaintiff later decided to sell her house and set an asking price of $850,000.  Pl.'s Resp. SOF ¶ 68.  Plaintiff sold her house on January 2, 2018, for "thousands of dollars" less than she expected.  *Id.* ¶ 91; Def.'s Resp. SOF at 21 ¶ 60.

### B.    Procedural Background

This action commenced in this court when Defendant removed Plaintiff's suit from the Superior Court of the District of Columbia.  *See* Notice of Removal, ECF No. 1 [hereinafter Removal].  The original complaint alleged claims of negligence and "personal injury" against Defendant Aviles and Defendant's insurer, Frederick Mutual Insurance Company ("Frederick

3

Mutual"). Removal, Compl., ECF No. 1. Plaintiff later amended her complaint to assert claims of negligence, breach of contract, fraudulent misrepresentation, and violation of the D.C. Consumer Protection Act against Aviles, and breach of contract against Frederick Mutual. Am. Compl., ECF No. 23. The court subsequently dismissed the case against Frederick Mutual. *See* Order, ECF No. 21; Mem. Op. & Order, ECF No. 31.

The court entered the first scheduling order on June 25, 2020. Order, ECF No. 22. That schedule included deadlines for expert discovery and provided that all discovery would close by December 31, 2020. *Id.* At the parties' requests, the court extended the discovery period multiple times, resulting in a final discovery cut-off of June 15, 2021. *See* Order Granting Pl.'s Modification of Scheduling Order, ECF No. 30; Minute Order, October 29, 2020; Order, ECF No. 35; Order, ECF No. 37; Order, ECF No. 41. Due to these modifications, October 20, 2022, became the deadline for Plaintiff's expert disclosures. *See* ECF No. 30.

During the discovery period, Plaintiff made one set of expert witness disclosures. On September 30, 2020, Plaintiff identified her treating physicians; two companies (but not an employee of the companies) who had inspected the furnace months later ("Frosty's Heating and Air Conditioning" and "Jiffy"); and the Washington Gas technician (unnamed) who detected the gas leak, all as "potential experts." *See* Def.'s Mot. to Strike Untimely Designation & Report of Brian K. Bramel & Preclude Pl.'s Reliance on Any Testimony by or Evidence From Same, ECF No. 67 [hereinafter Def.'s Mot. to Strike], Ex. D, ECF No. 67-5. Her disclosure did not include any expert specially retained to describe the standard of care for furnace installation or to opine that Defendant's installation violated the standard. *See id.*

Defendant, on the other hand, did identify such an expert witness. On February 23, 2021, Defendant disclosed a "preliminary expert disclosure and engineering report" for Nicholas Nava,

a licensed engineer.  Def.'s Mot. to Strike, Ex. H, ECF No. 67-9.  Mr. Nava would offer opinion testimony on a host of subjects, including "the lack of a causal link between the installation by Mr. Aviles in November 2016 and the gas leak detected on April 4, 2017" and "the possible causes of such leak."  *Id.* at 4 (ECF pagination).  Defendant reissued a verbatim disclosure as to Mr. Nava on April 22, 2022, as part of a supplemental expert disclosure.  *See* Def.'s Mot. to Strike, Ex. K, ECF No. 67-12.  Plaintiff never designated an expert to rebut Mr. Nava's opinions.

On July 1, 2022, after discovery had closed, the court set a summary judgment briefing schedule.  *See* Order, ECF No. 56.  Nearly three weeks later, on July 20, 2021, Plaintiff emailed defense counsel to advise that she was "working on a rebuttal witness to your mechanical engineer expert's updated report," an apparent reference to the reissued, verbatim Nava disclosure.  Def.'s Mot. to Strike, Ex. M, ECF No. 67-14.  Over two months later, on September 22, 2022, Plaintiff served on Defendant an expert disclosure for Brian K. Bramel.  *See* Def.'s Mot. to Strike, Ex. P, ECF No. 67-17 [hereinafter Bramel Report].[2]  According to his report, Mr. Bramel, an engineer, would opine that "[t]he proximate cause of the gas leak was Mr. Aviles not following applicable gas building codes and industry standards in installing the gas lines."  *Id.* at 7.  Specifically, Mr. Bramel had concluded that "[t]he proximate cause of the union leak was Mr. Aviles' lack of following industry standards in using the correct and proper tools to ensure the union nut was properly tightened."  *Id.* at 6.  The disclosure made by Plaintiff included an engagement letter signed by Mr. Bramel on August 10, 2021.  *See id.* at 8–12.

The parties filed their motions for summary judgment on October 15, 2021.  Pl.'s Cross-Mot.; Def.'s Mot.  Along with his motion, Defendant filed a motion to strike the untimely expert designation of Mr. Bramel.  *See* Def.'s Mot. to Strike.  Additionally, accompanying his opposition

---

[2] The court uses ECF pagination in all citations to the Bramel Report.

brief, Defendant filed a separate motion to strike portions of affidavits submitted in support of Plaintiff's motion.  *See* Def.'s Mot. to Strike Portions of Affidavits Submitted in Supp. of Pl.'s Mot. for Summ. J., ECF No. 76.

## III.   DISCUSSION

For reasons that will become evident, the court first resolves Defendant's motion to strike Plaintiff's late-disclosed expert, Mr. Bramel.  It then turns to addressing the parties' motions as to each of Plaintiff's claims.  The court need not decide Defendant's motion to strike portions of Plaintiff's affidavits.

### A.   Defendant's Motion to Strike Plaintiff's Untimely Expert Disclosure

Discovery in this case ended on June 15, 2021.  Yet, "more than three (3) months after the close of discovery, six (6) months after [the] deadline for Plaintiff to identify rebuttal experts, and eleven (11) months after the deadline for Plaintiff's initial Rule 26(a)(2)(B) expert disclosures," Plaintiff made her disclosures as to Mr. Bramel.  Def.'s Mot. to Strike ¶ 2.  The disclosure also came only three weeks before the parties' motions for summary judgment were due.  *Id.*  There is no question that Plaintiff's disclosure was untimely.  The only question is whether exclusion is the proper relief.

Rule 26(a)(2)(D) states that a party "must" make the required expert disclosures "at the times and in the sequences that the court orders."  FED. R. CIV. P. 26(a)(2)(D).  A party that fails to make a timely disclosure potentially faces a severe sanction:  exclusion of the expert.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  This sanction is "self-executing."  *Id.* advisory committee's note to 2003 amendment.  "The burden is

on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008).

Plaintiff attempts to meet this burden but fails. She first contends her untimely disclosure is "substantially justified because the findings are reliable and relevant to overall public safety." Pl.'s Opp'n to Strike Expert Testimony, ECF No. 73 [hereinafter Pl.'s Opp'n to Mot. to Strike], at 1. According to her, allowing Mr. Bramel's testimony is necessary to make Defendant's other customers aware that that they, too, are in danger of a potential gas leak due to an insufficiently secured pipe fitting. *See id.* at 3–4. But Plaintiff cites no authority for the proposition that a party that fails to make a timely, mandatory disclosure can avoid the sanction of exclusion by invoking a purported public benefit. The civil rules do not bend just because a party believes excusing its late disclosure is in the public interest.

Plaintiff also contends that her delay "in securing this report was not intentional or deliberate." *Id.* at 4. Her own admissions, however, belie that contention. Plaintiff concedes that she did not "plan to retain a mechanical engineer for trial" because she intended to prove her claim on *res ipsa loquitur* or negligence per se grounds. *Id.* at 5. Only after Defendant's deposition does she claim that the need for an engineering expert become apparent. *See id.* Defendant, however, sat for the second part of his deposition on April 23, 2021, and discovery closed on June 15, 2021. *See* Def.'s Mot. to Strike, Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Strike at 13 (mentioning Plaintiff's delay leading to the late deposition of Defendant's expert); Order, ECF No. 41 (extending close of discovery to June 15, 2021). Plaintiff offers no reason for why she was unable to secure an expert in those seven weeks, or why she did not seek to extend the discovery

period if finding an expert was proving difficult.[3]  She also does not explain why the need for a

rebuttal expert did not occur to her months earlier, when Defendant disclosed his expert's report

on February 23, 2021.  The deadline for a rebuttal report expired on March 25, 2021.  *See* Fed. R.

Civ. P. 26(a)(2)(D)(ii) (setting "30 days after the other party's disclosure" as the deadline for

disclosure of a rebuttal expert report).

Plaintiff alternatively contends that the late disclosure is harmless.  First, she suggests that

Defendant "suffers no harm in the delay" as Mr. Bramel's report is "not a primary expert report

nor a rebuttal" to Defendant's timely expert reports.  Pl.'s Opp'n to Mot. to Strike at 1.  But that

is nonsense.  On the very next page of her opposition, Plaintiff says that the report "informs the

Court on the proximate cause of the gas leak." *Id.* at 2.  Whether characterized as a "primary" or

"rebuttal" expert, Mr. Bramel is offering expert opinion testimony that required timely disclosure.

Next, Plaintiff contends Defendant cannot complain about the delay because the "report is simply

a factual statement and professional observation that is no different than Plaintiff's negligence

argument from the start of this lawsuit under res ipsa loquitur." *Id.* at 9–10 (emphasis omitted).

But that, too, is wrong.  Bramel proposes to testify that "[t]he proximate cause of the union leak

was Mr. Aviles' lack of following industry standards in using the correct and proper tools to ensure

the union nut was properly tightened."  Bramel Report at 4.  That is not fact testimony; it is classic

expert opinion testimony.

Finally, Plaintiff urges that Defendant is not prejudiced from the late disclosure because no

trial date is set and because "Defendant has ample time to research and respond or seek an

extension to respond to the findings."  Pl.'s Opp'n to Mot. to Strike at 10.  Implicit in Plaintiff's

---

[3] Plaintiff did seek to extend the discovery period one day before the deadline, but her motion did not offer the need to secure expert testimony as a reason for her request. *See* Pl.'s Mot. to Extend Scheduling Order, ECF No. 53.

argument is that the court could reopen discovery to permit Defendant to depose Mr. Bramel, to supplement Defendant's expert's report, or to find a different expert to rebut Mr. Bramel.  But the D.C. Circuit has said that the trial court is under no obligation to reopen discovery to rescue a party from its own lack of diligence.  In *Wannall v. Honeywell, Inc.*, the Circuit held that the trial court properly declined to admit a late-disclosed expert declaration in response to a renewed motion for summary judgment.  775 F.3d 425, 429–30 (D.C. Cir. 2014).  The court observed:

> Allowing the new declaration would have required either reopening discovery (and possibly delaying trial) or denying [the defendant] the opportunity to cross-examine [the plaintiff's expert] on his new opinions before trial and an adequate chance to offer expert testimony in rebuttal.  These are exactly the types of "harms" that disclosure deadlines are intended to prevent.

*Id.*  The same is true here.  Plaintiff has failed to show her late disclosure of Mr. Bramel's proposed opinion was harmless, justifying a full exclusion of his testimony.

The court declines to impose a lesser sanction short of exclusion, such as imposing expenses caused by the late disclosure or advising the jury of Plaintiff's failure.  *See* Fed. R. Civ. P. 37(c)(1).  To do so would unfairly save her from the consequences of her own strategic choices.  *See Wannall*, 775 F.3d at 430 (finding untimely disclosure of expert declaration not "substantially justified" where the party made a "strategic choice" that gave rise to the late disclosure, and affirming the rejection of lesser sanctions to ameliorate potential disclosure).  As noted earlier, Plaintiff admits that she intended all along to prove her case based on the narrow legal theories of *res ipsa loquitur* and negligence per se—without the use of an expert.  *See, e.g.*, Pl.'s Opp'n to Mot. to Strike at 5, 9; Pl.'s Opp'n to Def.'s Mot., ECF No. 78 [hereinafter Pl.'s Opp'n to SJ Mot.], at 6 ("Plaintiff informed Defendant at the start of discovery that an expert engineering witness was not required . . . .").  Thus, if the court were to excuse Plaintiff's late disclosure of Mr. Bramel's

opinion testimony, it would afford her the opportunity to shield herself from the consequences of her deliberate choice not to rely on an expert.  That result would be patently unfair to Defendant.

Plaintiff submits a bare list of excerpts from rules and cases at the end of her brief; only one of those citations warrants discussion.  In *Richardson v. Korson*, the trial court declined to exclude a plaintiff's late-filed expert report and reopened discovery to allow the defendant to depose the expert.  905 F. Supp. 2d 193, 199 (D.D.C. 2012).  There, the plaintiff filed an "Addendum" to his expert's report seven weeks after the close of discovery without seeking leave of court.  *See id.* at 197–98.  The Addendum supplemented an earlier report by identifying the basis of the expert's opinion concerning the national standard of care, which the earlier report did not do.  *See id.* at 199.  The court declined to exclude the untimely disclosure.  It instead reopened discovery to allow the defendant to depose the expert because no trial date had been set, "the harm to Plaintiff of precluding the report outweighs this disruption," and the additional discovery permitted was "very narrow."  *Id.* at 200.

*Richardson* is distinguishable in two critical ways.  First, the plaintiff in *Richardson* had at least submitted *some* form of an expert report before the end of discovery, thereby reducing the prejudice to the defendant, whereas Plaintiff here made no such designation.  Second, and more importantly, unlike in *Richardson*, Plaintiff here made a strategic decision during the discovery period *not* to rely on expert testimony to prove her case, while the plaintiff in *Richardson* signaled a clear intent to do so.  Plaintiff must bear the consequences of her litigation choices.

### B.  Negligence

#### 1.  *Lack of Expert Testimony*

The court turns now to the merits of Plaintiff's claims, starting with negligence. Defendant's primary argument in favor of summary judgment is straightforward: "[T]o establish

her negligence claim, Plaintiff is required to present expert testimony showing both the appropriate standard of care for [a furnace installation] and that [he] breached that standard," but she failed to timely do so.   Def.'s Mot., Def.'s Mem. of P. & A. in Supp. of Def.'s Mot., ECF No. 69-2 [hereinafter Def.'s Mem.], at 5.   Defendant argues additionally that Plaintiff has not offered sufficient evidence that his installation caused the gas leak or that the gas leak caused her injuries. *See id.* at 7.   Because the court agrees with the first argument, it does not reach the second.

"The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury."   *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (quoting *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984)) (internal quotation marks omitted).   When the standard of care is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror," the plaintiff must prove with expert testimony both the standard of care and that the defendant failed to adhere to it. *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (internal quotation marks omitted).   But if the alleged negligence occurred in a context "within the realm of common knowledge and everyday experience," expert testimony is not required for the plaintiff to meet her burden.   *Id.* at 1038–39 (internal quotation marks omitted).

There can be little doubt that the standard of care for installing a furnace relates so distinctly to a profession or occupation that is "beyond the ken of the average lay juror."   The D.C. Court of Appeals has held, for example, in a case alleging negligence in the rupture of a water main pipe, that "the operation and maintenance of a municipal water main system and the handling of leaks in that system are not subjects within the common knowledge of jurors."   *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433–34 (D.C. 2000).   Courts also have required expert testimony

11

for less complex systems.  *See, e.g., Wise v. United States*, 145 F. Supp. 3d 53, 62 (D.D.C. 2015) (requiring such testimony for installation of a handrail); *Owen v. United States*, 899 F. Supp. 2d 71, 80 (D.D.C. 2012) (requiring testimony for operation of a wheelchair lift and citing cases featuring other examples); *see also Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (observing that "[t]he D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge" and citing examples).  Much like these cases, here understanding the proper methods and instruments used to install a furnace and test for gas leaks—both of which Plaintiff alleges Defendant negligently performed—requires expert opinion testimony.

Plaintiff resists this conclusion, asserting that Defendant's "arguments are predicated on the misguided assumption that D.C. law always requires expert testimony on a matter involving safety or highly specialized occupations.  It does not."  Pl.'s Opp'n to SJ Mot. at 9.  She is correct that District of Columbia law does not *always* require expert testimony to establish the standard of care and breach.  But "[t]he case law indicates that the 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required."  *Briggs*, 481 F.3d at 845. This is not such a case.  Plaintiff's proposed expert, Mr. Bramel, opines that Defendant failed to meet the standard of care when installing her furnace because he used an incorrect type of wrench to tighten the union pipe fitting.  Bramel Report at 4.  The "everyday experience" of jurors would not make such a conclusion "clear."  *See Briggs*, 481 F.3d at 845 (citing *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000) (holding that no expert testimony was necessary where boards covering a half block long and three foot wide trench were laid so as to produce a six-to-seven inch gap between boards); *District of Columbia v. Shannon*, 696 A.2d 1359, 1365–

66 (D.C. 1997) (holding the same where child's thumb was ripped out of her hand after getting caught in an open hole in the metal handrail of a playground slide); *Jimenez v. Hawk*, 683 A.2d 457, 462–63 (D.C. 1996) (same where abandoned tank containing used motor oil led to fire)).[4] Therefore, without an expert, Plaintiff lacks the proof needed to make out a negligence claim.

### 2. Res Ipsa Loquitur *and Negligence Per Se*

Plaintiff nevertheless insists that, even without an expert, she has met her burden of proof. She contends that under a theory of either *res ipsa loquitur* or negligence per se, she should, at minimum get to a jury. She is wrong on both theories.

#### a. *Res ipsa loquitur*

"The principle of *res ipsa loquitur* permits a jury to draw an inference of negligence based upon special circumstances where direct evidence of negligence is lacking." *Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C. Cir. 1989). "Before submitting the case to the jury, it is the 'function of the court to determine whether the inference may reasonably be drawn by the jury or whether it must necessarily be drawn.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 328D(2) (AM. L. INST. 1965)). "The principle, however, does not relieve plaintiff of the burden of proving the essential elements of negligence; it merely permits the case to go to the jury." *Id.*

The mere happening of an accident does not permit a jury to infer negligence under a *res ipsa* theory. *See id.*; *Wash. Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C. 1968) ("The doctrine "should be applied with caution . . . so that the mere happening of an accident will not

---

[4] Plaintiff also offers evidence that inspections of the furnace months after its installation revealed various problems. *See* Def.'s Resp. SOF at 12 ¶¶ 35–36 (Frosty's inspection on April 27, 2017, noting problems with construction of the plenum box, leaking air ducts, and a wrong size filter), 13–14 ¶¶ 38–40 (home inspector in November 2017, noting problems with "automatic safety controls, improperly attached ductwork/plenum, filters, heat/cool distribution, a taped safety switch on the fan coil," and Jiffy's observing on December 10, 2019, "shoddy" installation). But even if that evidence were admissible, she has presented no proof that any of these problems is in any way related to the loose pipe fitting that resulted in the gas leak. *See id.*

permit the inference of a defendant's liability.").  To prove negligence based on the theory, a plaintiff must establish the following:

> (1) the event must be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Bell*, 866 F.2d at 455.  The exclusive-control element has arguably been relaxed since the Circuit's articulation of those elements in *Bell*.  *See Jones v. NYLife Real Est. Holdings, LLC*, 252 A.3d 490, 501 (D.C. 2021) (retaining all elements but mentioning that control can be "exclusive or joint").

Plaintiff's proof fails on the first two elements.  "[A]lthough the first element requires that the accident be of the kind that does not ordinarily occur in the absence of negligence, the principle does not relieve the plaintiff of showing that the defendant's negligence most probably caused the accident."  *Bell*, 866 F.2d at 455.  Plaintiff comes nowhere close to showing that Defendant both negligently installed the furnace *and* his negligence "probably caused" the gas leak.

Plaintiff's best evidence of Defendant's liability is that he installed the furnace from which the gas leak emanated.  But Washington Gas detected the leak more than *four* months after Defendant installed the furnace, during which time Plaintiff smelled no gas in the house.  Pl.'s Resp. SOF ¶ 39.  Plaintiff did complain of "flu symptoms" in early January, but she has presented no evidence, expert or otherwise, that those symptoms were caused by gas exposure.  Def.'s Resp. SOF at 16 ¶ 47–48.  Additionally, as discussed, she has offered no expert testimony other than the untimely Bramel Report to trace the cause of the leak to Defendant.  Contrary to Plaintiff's belief, "presentation of expert testimony is not incompatible with the *res ipsa* doctrine," and in fact the D.C. Court of Appeals has said, "when the facts are complicated . . . we generally *require* the plaintiff to produce expert testimony to lay the foundation for invoking *res ipsa loquitur*."  *D.C.*

*Hous. Auth. v. Pinkney*, 970 A.2d 854, 868 (D.C. 2009); *see also Quin v. George Washington Univ.*, 407 A.2d 580, 583–84 (D.C. 1979) (stating that "if an expert can say as a matter of expert knowledge that the injury does not ordinarily occur unless caused by negligence, the jury should be permitted to infer negligence from the occurrence").  And, finally, the only expert testimony on the record comes from Defendant's expert, Mr. Nava, and his opinion testimony is unrebutted that there are reasons other than Defendant's negligence that could have caused the leak.  "The leak could have resulted from other sources including but not limited to intentional or incidental contact of the 3/4 inch union by materials stored in the utility closet, manipulation by others, or contact with or vibration of gas piping upstream of the equipment shutoff valve."  Def.'s Mot., Ex. M, ECF No. 69-16, at 8 (ECF pagination).  Because the undisputed record evidence is that the loose pipe fitting can be attributed to a source other than Defendant, Plaintiff cannot establish that Defendant "probably caused" the gas leak.  She is therefore not entitled to go to the jury under a *res ipsa loquitur* theory.  *See Bell*, 866 F.2d at 457 (finding that the principle did not apply when "[p]laintiffs made no effort either to rebut the non-negligent causes or to identify defendant's alleged negligence as the most probable cause of the injury"); *Marshall v. Townsend*, 464 A.2d 144, 145 (D.C. 1983) (holding that evidence was insufficient as a matter of law to infer negligence through *res ipsa loquitur* where "negligence was only one of many plausible explanations" for a water leak).

Plaintiff's proof also fails on the element of control.  To state the obvious, Defendant did not have any control, let alone exclusive control, over the furnace during the four months between installation and detection of the leak.  He never once returned to the house during that period to inspect or fix the furnace.  And, even if Defendant's installation could amount to some degree of control, "[a] party who is himself in control of the instrumentality may not rely on res ipsa loquitur

against a party who shares that control." *Wash. Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C. 1968). Plaintiff, at a minimum, had "equal access to the [furnace]" during the four months following the installation; therefore, she cannot rely on *res ipsa loquitur* against Defendant. *Id.*

b.   Negligence per se

Plaintiff's attempted use of the doctrine of negligence per se is no more helpful to her case. "To prevail on a negligence per se theory, the plaintiff may, in certain circumstances and under specified conditions . . . , rely on a statute or regulation as proof of the applicable standard of care." *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996). But not every statute or regulation is evidence of a standard of care. At a minimum, "the statute or regulation relied on must promote public safety and have been enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred." *Id.* at 579 (internal quotation marks omitted). Additionally, the law "must include plaintiff as a member of the class to be protected" and "impose specific duties on the defendant." *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982) (internal quotation marks omitted). Ultimately, whether a statute or regulation qualifies as proof of the standard of care is a decision for the court. *See McNeil Pharm.*, 686 A.2d at 579.

Here, Plaintiff relies on the District's requirement that, a person who installs furnaces, like Defendant, must have a license to work in the District of Columbia. Pl.'s Cross-Mot. at 8–9. But a licensing requirement does not "impose specific duties" except acquiring a license. It thus does not embody a "*substantive standard of care*, but rather an *administrative requirement*" aimed at furthering . . . regulatory goals." *Iacangelo v. Georgetown Univ.*, 595 F. Supp. 2d 87, 92 (D.D.C. 2009) (holding that statute requiring FDA approval for medical devices imposes not a substantive standard of care but an administrative requirement); *see also Talley v. Danek Med., Inc.*, 179 F.3d 154, 159 (4th Cir. 1999) ("[W]here a particular statutory requirement does not itself articulate a

standard of care but rather requires only regulatory approval, or a license, or a report for the administration of a more general underlying standard, violation of that administrative requirement itself is not a breach of a standard of care."); *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1222 (3d Cir. 1989) (holding that "general licensing or permit schemes do not usually establish standards of competence; they do not usually represent judgments that a violation of the licensing scheme will generally constitute the breach of a duty to a particular person rather than to the state").  The District's licensing scheme therefore does not supply a standard of care that can support Plaintiff's negligence per se theory.

Plaintiff's theory contains yet another fatal flaw: she has not shown that a "statutory violation was the proximate cause of [her] injuries." *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1277 (D.C. 1987).  A leading torts treatise offers an apt analogy: "When a car is driven without a license, the act of driving the car certainly causes a collision; the absence of the license, or the existence of the statute, of course does not."  W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 36, at 223–24 (5th ed. 1984).  The same is true here.  Plaintiff's theory is that Defendant's improper installation of the furnace resulted in her injury.  His lack of a license was not its proximate cause.  *See Talley*, 179 F.3d at 159 (stating that the failure to comply with an administrative requirement "cannot be the proximate cause of the injury").  Her negligence per se theory fails for that additional reason.

### C.    Breach of Contract

Plaintiff's breach-of-contract claim is premised on the same theory as her negligence claim: that "Defendant Aviles' failure to properly secure the gas line on the new HVAC was the direct and proximate cause of Plaintiff's injuries."  Am. Compl. ¶ 30.  Although tort and contract claims arising out of the same incident theoretically have different elements and standards of proof, "in

professional malpractice cases, alleged negligence and breach of contract are typically premised on the same duty of care and, as a consequence, should typically lead to the same legal result." *Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187, 1191 (D.C. 1986); *see also O'Neil v. Bergan*, 452 A.2d 337, 343 (D.C. 1982) (noting in a legal malpractice case that an attorney's liability for improper performance is governed by the same standard of care in both tort and contract). So, Plaintiff's contract claim fails for the same reasons as her negligence claim.[5]

### D.    Fraudulent Misrepresentation

Defendant also moves for summary judgment on Plaintiff's fraudulent misrepresentation claim. In the District of Columbia, the elements of fraudulent misrepresentation are "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992). A plaintiff claiming fraudulent misrepresentation "must also have suffered some injury as a consequence of [her] reliance" to prevail. *Id.* (citing *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)).

Plaintiff claims that Defendant misrepresented the product that he would be installing in her home, promising he would sell her a larger unit (a 90% furnace) but instead giving her a smaller one—an 80% furnace. *See* Def.'s Mot., Ex. J, ECF No. 69-12, at 5 (ECF pagination) (Plaintiff claiming that Defendant "willfully misrepresented the product he sold and overcharged Plaintiff for an HVAC system that was not what Plaintiff had contracted with him to install"). The parol

---

[5] In her Amended Complaint, Plaintiff also alleges that later inspections of the furnace by other service providers revealed additional deficiencies. Am. Compl. ¶¶ 27–28; *see also* n.4 *supra*. It is not clear if Plaintiff is including those alleged installation errors as part of her breach-of-contract claim. But even if she were, the claim would fail, as she has supplied no evidence of any out-of-pocket expenses paid to remedy those alleged mistakes. And, to the extent she claims a loss in home value, *see id.* ¶ 31, that assertion is not supported by any fact or expert evidence.

evidence rule, however, precludes her claim of fraud.  A party with the capacity and opportunity to read a contract, who has executed it, not under any emergency, and whose signature has not been obtained by trick or fraud cannot claim fraud in the inducement.  *See One-O-One Enters, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988).   Here, Plaintiff admits that the "parties' contract . . . expressly identifies the unit to be installed as an '80% gas furnace, 2 stage, 80,000 BTU'" unit.  Pl.'s Resp. SOF ¶ 7; *see also* Def.'s Mot., Ex. B, ECF No. 69-4 (written record of purchase and installation of smaller unit in which Plaintiff by her signature acknowledged, "Above completed work is acknowledged to be satisfactory").  Plaintiff's only defense is that she did not notice the product discrepancy until a week later.  *See* Pl.'s Resp. SOF ¶ 7; Pl.'s Opp'n to SJ Mot. at 39 (stating that Plaintiff "did not review the itemized invoice until a week later").  But Plaintiff cannot claim fraud when the contract clearly identifies the product that she purchased and received.

Additionally, Plaintiff contends that Defendant fraudulently induced her to enter into a sales agreement by holding himself out to be an authorized Trane dealer and failing to disclose that he did not have a license to work in the District of Columbia.  *See* Pl.'s Opp'n to SJ Mot. at 40.  Defendant disputes that he held himself out as an authorized Trane dealer or otherwise engaged in fraud, Def.'s Resp. SOF at 9–10 ¶ 26.A, 23 ¶ 1, but argues that notwithstanding that factual dispute, he is entitled to summary judgment because Plaintiff has not shown any harm resulting from the alleged misrepresentations.  Def.'s Mem. at 23–24.  The court agrees.

Under District of Columbia law, the victim of deceit in the sale of property is entitled to "the difference between the amount paid and the market value of the thing acquired."  *Dresser*, 465 A.2d at 840 (internal quotation marks omitted); *see also Espaillat v. Berlitz Sch. of Languages of Am., Inc.*, 383 F.2d 220, 222 (D.C. Cir. 1967) (stating that where fraud is alleged to have induced a sale or exchange of property, "the relief to which the party defrauded would be entitled would

be the difference between the value of the property which he received and the value of the property with which he parted under the contract" (internal quotation marks omitted)).  Here, Plaintiff has offered no testimony, expert or otherwise, to establish the difference in value between the Trane furnace that she bargained for and the Trane furnace that she received.  Therefore, even if Plaintiff were fraudulently induced to purchase a furnace from Defendant, she has failed to prove any remediable harm.

### E.    D.C. Consumer Protection Act

Plaintiff asks for entry of judgment as to her claim under the D.C. Consumer Protection Act, D.C. Code § 28-3904 et al.  *See* Am. Compl. ¶ 40 (seeking damages under the D.C. Consumer Protection Act); Pl.'s Cross-Mot. at 11.  But Plaintiff's argument is wholly conclusory, as it consists of just two sentences:

> Plaintiff contends that Defendant violated several sections of the law governing deceptive and unfair labor practices of the DC Consumer Protection Act and the DC municipal regulations governing refrigerant and air conditioning contractors. . . . As noted in the negligence per se arguments, Defendant has deliberately and continuously flouted the law by continuing to operate this HVAC business with total disregard for the safety and well-being of unsuspecting customers throughout the DMV region.

Pl.'s Cross-Mot. at 11.  The court is under no compulsion to consider such an undeveloped argument.  And, even if the court were to consider it, there remain genuine disputes of material fact, at least, as to what Defendant said to Plaintiff about being a certified Trane technician.  *See* Def.'s Resp. SOF at 2–3 ¶¶ 6–7.  And, although Defendant admits he did not disclose his unlicensed status in the District of Columbia, *id.* at 9 ¶ 26.A, a question of fact remains whether that omission is "material" and if the failure to disclose "tends to mislead."  D.C. Code § 28-3904(f); *see also* Am. Compl. ¶ 40 (citing § 28-3904(f)).

## V.     CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Partial Motion for Summary Judgment, ECF No. 69, is granted as to Plaintiff's negligence, breach-of-contract, and fraudulent-misrepresentation claims.  Defendant's Motion to Strike Plaintiff's Untimely Expert Report, ECF No. 67, is granted.  Defendant's Motion to Strike Portions of Plaintiff's Affidavits, ECF No. 76, is denied as moot.  Plaintiff's Motion for Summary Judgment, ECF No. 70, is denied.

What remains of this case, then, is Plaintiff's claim under the D.C. Consumer Protection Act.  The parties shall appear for a remote status conference on July 25, 2022, at 11:00 a.m. to discuss a schedule for further proceedings in this matter.


Dated:  July 8, 2022
                                                                    Amit P. Mehta
                                                        United States District Court Judge